## Henry *versus* Philadelphia Warehouse Company.

1. The plaintiff, through a broker, bought cotton in New Orleans, he paid the sellers who gave a receipt in his name; there was evidence that he gave the broker an order on the sellers for the cotton; the broker took the bill of lading in his own name for the shipment of the cotton, and made a draft on the plaintiff for the price, sold the draft, endorsed the bill of lading to the purchaser, and delivered it as security with the draft. By the law of Louisiana all bills of lading, &c., are negotiable by endorsement as bills of exchange, &c. *Held,* that the broker's endorsement of the bill of lading passed the cotton to the purchaser of the draft.

2. The possession of the goods gave the broker an apparent ownership and having thus the indicia of property he could by the operation of the Louisiana law, transfer it to a bonâ fide pledgee for value without notice.

February 8th 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the District Court of *Philadelphia:* No. 327, to January Term 1874.

This was an action of replevin for twenty-one bales of cotton, brought May 20th 1872, by Thomas Henry against the Philadelphia Warehouse Company.

The cause was tried January 14th 1874.

The plaintiff testified that in April 1872 he was in New Orleans and went to J. Vaudry, Jr., a cotton broker, to purchase cotton; Vaudry took him to Foster & Gwyn, cotton factors, and he bought from them twenty-one bales; he paid them $1976.82 for the cotton, and took their receipt, and left the cotton with them; they said they would see it shipped; a draft was drawn on him by Vaudry for $1939.14, which he refused to pay.

Gwyn, of the firm of Foster & Gwyn, testified that plaintiff was introduced to him by Vaudry, in April or May 1872, in reference to the purchase of cotton; Vaudry, as broker of plaintiff, purchased twenty-one bales from them; the price was $1976.82, which was paid to them by Vaudry; on re-weighing there proved to be some pounds short, and they paid back to Vaudry $37.68; the plaintiff did not purchase the cotton in person; they delivered the cotton to Vaudry; the cotton was purchased for plaintiff, but in New Orleans the broker is considered the purchaser unless otherwise specified. Vaudry paid for it before delivery; he had an order from them for its delivery, but suffered it to remain where it was for want of a steamer to ship it in. The cotton was paid for by cash $176.82, one check for $300, and three checks for $500 each, of a Philadelphia bank on a New York bank.

The checks were in evidence; one of them was:—

"Union National Bank, Philadelphia, April 16th 1872.
"Pay to the order of Thomas Henry, five hundred dollars.
                    "P. A. KELLER, Cashier.
"To the Fifth National Bank, New York.
"$500."
Endorsed: "THOMAS HENRY, FOSTER & GWYN."

[Henry v. Philadelphia Warehouse Co.]

The others were similar.

The following is Foster & Gwyn's receipt:—

" Received, New Orleans, 13th April 1872, of Thomas Henry, Esq., nineteen hundred and seventy-six dollars and eighty-two cents, for amount twenty-one bales cotton, sold him this day.
    " $1976.82.                    FOSTER & GWYN.''

The plaintiff gave in evidence :—

" Invoice of 21 B. C. purchased from Messrs. Foster & Gwyn, ac. of Mr. Thomas Henry."

Here follow the number and weight of each bale.

" 21 B. C. weighing 10,073 lb. @ 19⅝ cts.,    .    $1976.82

" Brokerage, ½ per cent.,    .    .    .    .    9.88

                                " J. VAUDRY, JR.
" New Orleans, April 13th 1872."

Under objection and exception the court admitted the following letter produced by plaintiff on call:—

                        " New Orleans, April 27th 1872.
" Mr. THOMAS HENRY, Esq.,

" Dear Sir:—Yours of the 20th received.   The reason why you have not received the bill of lading of the 21 b. c. was that the steamers for Philadelphia was full, and I could get no freight.   I will ship your 21 b. c. on the steamer Liberty, via Baltimore. She leaves on Thursday evening. * * *
                                " J. VAUDRY, JR."

For the defendants there was evidence that about April or May 1872 the Crescent City National Bank of New Orleans, in the usual course of business, purchased from Vaudry his draft on the plaintiff for $1939.14; at the same time he delivered to the bank as security a bill of lading to himself from the Baltimore and Havana Steamship Company at New Orleans, for twenty-one bales of cotton on board the " Liberty," bound for Baltimore, &c. Vaudry endorsed the bill of lading to the Crescent City Bank, and the cashier of that bank endorsed it, "Deliver to the order of the National Bank of the Republic, New York."   The bill of lading was sent by the Crescent City Bank to the Bank of the Republic. The draft was endorsed by the Bank of the Republic to the Mechanics' National Bank of Philadelphia, and was returned protested.   Vaudry's draft on Henry came to the Mechanics' Bank of Philadelphia with the bill of lading attached ; on the refusal of payment of the draft by plaintiff, that bank took possession of the cotton and stored it with the defendants.

By the Revised Code of Louisiana, a bill of lading may be transferred by endorsement thereon, and the party receiving

[Henry *v.* Philadelphia Warehouse Co.]

such transfer shall be regarded as the *owner* of the property named in the bill, so as to secure any pledge or lien made thereof to him.

Also, "All receipts, bills of lading, vouchers, or other documents, issued by any cotton-press owner, wharfinger, forwarder, or other person, boat, vessel, railroad, transportation, or transfer company, as by this act provided, shall be negotiable by endorsement in blank, or by special endorsement, in the same manner and to the same effect as bills of exchange and promissory notes now are."

The court charged :—

"If you find from the evidence that Vaudry had possession of and actually shipped the cotton, received bill of lading therefor, endorsed it to the bank, who took it in good faith, your verdict should be for defendants."

The verdict was for the defendants ; the plaintiff took a writ of error, and assigned the charge of the court for error.

*S. Dickson*, for plaintiff in error.—Vaudry obtained the bill of lading fraudulently, and could therefore pass no title to the goods by endorsing it to a purchaser for value without notice of the fraud : Kingsford *v.* Merry, 1 H. & N. 503 ; Decan *v.* Shipper, 11 Casey 239.

*W. J. McElroy*, for defendants in error.—A bill of lading for the delivery of goods to the holder of it, or to another who has endorsed it to the holder, is as complete evidence of the holder"s title to the goods as a bill of exchange or promissory note by the payee or regular endorsee is of title to the debt which it represents : Schumacher *v.* Eby, 12 Harris 525 ; Arbuckle *v.* Thompson, 1 Wright 176. On this question the statute law of Louisiana fixes the rights of the parties. By the law of that state, a party who takes negotiable paper before maturity, for a valuable consideration, in good faith and without knowledge of any defect of title, holds it by a title good against the world, even though it had been lost or stolen, fraudulently obtained or issued, or the consideration was illegal or wholly or partially failed : Follain *v.* Dupre, 11 Robinson 464 ; Doll *v.* Rizetti, 20 La. Ann. Rep. 263 ; Cotton *v.* Sterling, 20 Id. 282 ; Knox *v.* White, Ibid. 326 ; Mallard *v.* Aillet, 6 Id. 93. In Pennsylvania, where negotiable paper is fraudulently put into circulation, only he who has actual knowledge of the fraud, or has been grossly negligent in obtaining such knowledge, is affected by the fraud : Haldeman *v.* The Bank, 4 Casey 440 ; Heist *v.* Hart, 23 P. F. Smith 286 ; Zimmerman *v.* Rote, 25 Id. 188. A bonâ fide purchaser for a valuable consideration and without notice, from a fraudulent vendee, takes a good title clear of the fraud, whether it be actual or legal : Sinclair *v.* Healy, 4 Wright 417. Where the same thing is sold to two different persons, by contracts equally valid, and the second vendee is without notice of the first sale, he who first obtains possession is

[Henry *v.* Philadelphia Warehouse Co.]

entitled to the property: Winslow *v.* Leonard, 12 Harris 14; Clemson *v.* Davidson, 5 Binn. 392, 398; Shaw *v.* Levy, 17 S. & R. 99; Hazzard *v.* Hamlin, 5 Watts 201. Where one of two innocent persons must suffer by the fraud or negligence of a third, he who has enabled such third person to occasion the loss ought to bear it: Fitzherbert *v.* Mather, 1 T. R. 12; Mundorff *v.* Wickersham, 13 P. F. Smith 89.

Judgment was entered in the Supreme Court February 21st 1876,

PER CURIAM.—We think this case is governed by the statute of Louisiana, where the transaction took place. By the operation of the first section or paragraph, the endorsement of the bill of lading by the holder carries the right of property in the goods specified in the bill to the transferee, so far as to give validity to any pledge, lien or transfer to the transferee. The second paragraph provides that such bills of lading shall be negotiable by endorsement in blank or specially in the same manner and to the same extent as bills of exchange or promissory notes. It is clear from the evidence that Vaudry, who shipped the goods and took the bill of lading, was in actual possession of them by delivery from the factors. His possession gave him an apparent control over them, and he thus shipped them, and took the bill of lading to himself. He thus had all the *indicia* of property or power over the goods when he endorsed the bill of lading. Under these circumstances, and by the operation of the statute, he stood in a position to transfer the property in the goods to a bonâ fide pledgee for value and without notice. We cannot say, therefore, that it was error in the court to say, "if Vaudry had possession, and actually shipped the cotton, received the bill of lading therefor, and endorsed it to the bank, who took it in good faith, the verdict should be for the defendant." The evidence relied on by the plaintiff went to show only a want of authority on part of the factor to deliver the cotton to Vaudry, and on his part to receive it; but still as to the shipment and delivery of the bill of lading to him by the carrier, there was an actual and apparently a rightful possession, enabling him to obtain the bill of lading. Such being the facts, the transfer of the bill of lading operating by the statute on the property in the cotton, and being negotiable, and having by its endorsement the effect of a bill of exchange or promissory note, it carried the property over to the bank advancing the money in good faith upon the security of the pledge.

The letter received in evidence was not so wholly irrelevant as to make its reception a substantial error. It was written before the shipment to the plaintiff, and in response to a letter from the plaintiff. It was a minute, yet not entirely immaterial part of the *res gestæ;* and did not materially affect the state of facts upon which the instruction of the court was given.

Judgment affirmed.